**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHEW KING TAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>                              Defendants.<br><br><br>THIS DOCUMENT RELATES TO:<br><br>       1:21-cv-08618-PAC<br>       1:21-cv-08752-PAC<br>       1:21-cv-08897-PAC<br>       1:21-cv-09420-PAC<br>       1:21-cv-09564-PAC<br>       1:21-cv-10286-PAC<br>       1:21-cv-10791-PAC<br>       1:21-cv-10999-PAC<br>       1:22-cv-00169-PAC | Case No. 1:24-cv-08413-PAC<br><br>Hon. Paul A. Crotty<br><br><br>**JOINT SUBMISSION ON BEHALF OF THE PLAINTIFF GROUP REGARDING CONSOLIDATION** |

Plaintiffs Chew King Tan, Travis Florio, Michael Merson, Mark Ulanch, Igor Li, Kai Chen, Alma Felix, Alison Scully, Su Yan, Kevin Lee, and lead plaintiff movants the Kellner Newcomer Family Partnership (the "Partnership"), Felix Urman ("Urman"), Alexander Shapovalov ("Shapovalov"), Sajed Hanif ("Hanif"), and Kuan Iok Ieong ("Ieong") (the "Plaintiff Group") respectfully submit this memorandum pursuant to the Court's instructions during the January 25, 2022 status conference (the "Status Conference"). The Plaintiff Group represents all plaintiffs who have filed an action, the movants with the top two largest losses overall, the movants with the largest claimed loss in Viacom and Vipshop securities, and several additional movants. The

Plaintiff Group respectfully recommends consolidation of the Related Actions[1] and then prompt appointment of unified Co-Lead Plaintiffs and Co-Lead Counsel to efficiently prosecute "the litigation as a whole" as mandated by the PSLRA. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004); *Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011) (Crotty, J.).

There are 10 Related Actions before the Court, all asserting substantially similar federal securities claims arising out of the same alleged misconduct by the same defendants, Goldman Sachs Group, Inc. and Morgan Stanley. As such, from the outset of our months'-long pre-suit investigation, the undersigned firms Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Hedin Hall LLP ("Hedin Hall") contemplated that some measure of formal coordination or consolidation across these nearly identical actions would likely be in the interest of all involved. Now, with the benefit of the Court's guidance during the Status Conference, we, along with Pomerantz LLP ("Pomerantz") and Johnson Fistel LLP ("Johnson Fistel"), and each of the other undersigned firms (who collectively represent the vast majority of plaintiffs and movants, as well as all of the cases), have reached consensus that consolidation is the best path forward.[2]

---

[1]    "Related Actions" collectively refers to *Chew King Tan v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-08413-PAC; *Travis Florio v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-08618-PAC; *Michael Merson v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No.1:21-cv-08752-PAC; *Mark Ulanch v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-08897-PAC; *Igor Li v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-09420-PAC; *Kai Chen v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-09564-PAC; *Alma Felix v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-10286; *Alison Scully v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-10791-PAC; *Su Yan v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:21-cv-10999-PAC; *Kevin Lee v. Goldman Sachs Group Inc. and Morgan Stanley*, Case No. 1:22-cv-00169-PAC.

[2]    Scott+Scott, Hedin Hall, Pomerantz, and Johnson Fistel collectively represent every plaintiff who has filed a complaint across the Related Actions and five out of the seven remaining lead plaintiff movants, including presumptive lead plaintiffs the Partnership, Urman and Shapovalov, as well as Hanif and Ieong.

Where, as here, the Court faces several overlapping securities class actions, the PSLRA is clear that "the Court shall *first* decide [whether] to consolidate." *Richman*, 274 F.R.D. at 475. And while the choice between consolidation and other forms of coordination remains a matter of discretion for the Court, there is simply no doubt that related actions like these, "which make nearly identical allegations" and "involve common questions of law and fact," can and (often should) "be consolidated pursuant to Federal Rule of Civil Procedure 42(a)(2)." *Id.* Indeed, all parties agree that each of the Related Actions rest on nearly identical allegations and will ultimately turn on a host of common issues of law and fact. As such, the Court's observation during the Status Conference was spot-on: the Related Actions appear "tailor-made" for consolidation.

Over the past few days, Scott+Scott, Hedin Hall, Pomerantz and Johnson Fistel, along with each of the undersigned, have engaged both Defendants and all other plaintiffs in extensive meet-and-confer discussions to identify and address any concerns that might genuinely counsel against consolidation. Nothing concrete or credible surfaced. To be sure, several of the smaller movants initially queried whether the PSLRA even allows consolidation of overlapping but non-identical classes. Controlling Second Circuit authority could not be clearer that such consolidation is not only allowed but favored. *See*, *e.g.*, *Hevesi*, 366 F.3d at 82 (explaining that the PSLRA "empower[s]" a lead plaintiff "to exercise control over the litigation as whole," even where it may be "inevitable that . . . the lead plaintiff will not have standing to sue on every claim."); *see also Richman*, 274 F.R.D. at 479 ("The claims of the proposed lead plaintiff need not be identical to the claims alleged by other class members."). Other movants questioned whether the presence here of different "securities" or different "issuers" might somehow distinguish this controlling Second Circuit authority. This Court's own prior rulings are instructive. *See*, *e.g.*, *id.* at 477 (consolidating overlapping class actions even though they involved different securities; rejecting

3

objection that lead plaintiff who purchased only one category of security would somehow "lack financial incentive to actively prosecute" claims on behalf of other securities purchasers); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig*., MDL 12-2389, 2013 WL 4399215, at *3 (S.D.N.Y. Aug. 13, 2013) (tracing "long history" of decisions within the Second Circuit rejecting notion that "any consolidated securities fraud class action [must] carry with it a corresponding ecosystem of separate class actions seeking relief on behalf of securities holders [who] vary from the lead plaintiffs."); *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig*., No. 09 MD 2058, 2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011) (rejecting security-by-security approach because it "invites the type of lawyer-driven litigation that the PSLRA seeks to avoid, and would likely promote near-endless skirmishes about the securities holders who fall outside a [security-specific] class definition"); *In re Synergy Pharmaceuticals Inc. Sec. Litig*., 18 Civ. 873, 2019 WL 6150713, at *4-*6 (E.D.N.Y. Nov. 20, 2019) (collecting cases).

Another of the movants suggested that even if consolidation and unified lead plaintiff appointment would be proper and efficient through the pleading, motion to dismiss, and discovery stages (something all parties agree on), there still might be some risk of unspecified conflicts arising at later stages of the cases (such as at class certification or with respect to damages calculations). We believe those worries are overblown. None of those movants have been able to identify anything concrete, indeed nothing beyond the same individualized damages concerns typical of nearly every securities class action (often within single security classes). *See*, *e.g.*, *Strougo v. Barclays PLC*, 312 F.R.D. 307, 313 (S.D.N.Y. 2016) ("Issues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases.") (citing *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 407-08 (2d Cir. 2015)); *In re Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 109 (S.D.N.Y.2009) ("'[T]he fact that damages must be

calculated on an individual basis is no impediment…'").[3]  While that sort of hypothetical risk is present in all consolidated securities actions, we believe it is exceedingly unlikely to pose any serious complications here or at any later stage, as evidenced by, *inter alia*, the collective inability of the numerous, experienced securities firms present, across several days of concerted effort, to identify even a single concrete risk of conflict likely to arise.

In the end, only two movants could not reach complete agreement on consolidation, but even those two movants agree that consolidation in part is warranted.  The proposed order submitted by Movant Krueger reflects his agreement that the Related Actions should be consolidated for pre-trial purposes.  ECF No. 37-1, ¶1 *Merson v. Goldman Sachs*, No. 21-CV-8752-PAC (S.D.N.Y.).  We understand that movant Zaheer similarly agrees to some form of coordination or consolidation of some or all of the Related Actions through fact discovery.

Of course, no one can predict the future with certainty, but given the uniform claims on nearly uniform facts across the Related Actions, the undersigned remain confident that speculation by a few outliers is no reason to hamper or delay the clear and present efficiencies to be gained by prompt consolidation.  Even the competing letters on this narrow threshold issue, filed across

---

[3]    Regrettably, in a transparent attempt to manufacture a conflict where none exists, movant Michael Krueger claims that the various movants are having "disagreements" regarding how to calculate "damages."  *See* ECF No. 37, *Merson v. Goldman Sachs*, 21-CV-8752-PAC (S.D.N.Y.). That representation is simply incorrect.  There has been no disagreement at all.  Rather, all plaintiffs have recognized that substantial amounts of work must occur in discovery and through an expert in order to begin to calculate damages.  In fact, up until yesterday, Krueger's counsel was working collaboratively with counsel for the Plaintiffs' Group to retain an expert selected by Krueger's counsel to examine the issue.  Until a significant amount of this work has occurred, the Plaintiffs' Group does not plan to take a position on how to calculate damages because doing so would be premature.  That said, we believe consolidation will promote a uniform approach to damages, which, we respectfully submit, better serves the class.  Notably, Krueger's counsel filed additional motions to be appointed as lead counsel of various of the other Related Actions, apparently not seeing a conflict at that time.  *See, e.g.,* ECF No. 18 in 21-cv-8897.

numerous dockets, underscore both the unwieldiness of keeping the cases separate, with every major decision going forward at the mercy of a "herding cats" negotiation, and the obvious, immediate benefits of consolidation, which can empower all plaintiffs to speak with one voice. Moreover, there is plenty of real, urgent work to be done on the actual merits of the case. A go-it-alone structure will only slow that work down. And, unspecified future risk in the abstract is no reason for further delay. Consolidating the Related Actions and moving them all forward now with a unified voice is plainly in the best interests of all potential class members across each of the Related Actions, and the most efficient path forward.[4]

Should the Court agree, upon consolidation, we believe the appropriate next step would be for the Court to appoint joint movants the Partnership and Urman as Co-Lead Plaintiffs "for the consolidated action." *Richman*, 274 F.R.D. at 275 (quoting 15 U.S.C. §78u-4(a)(3)(B)(ii)). Under the PSLRA, the "most adequate plaintiff" is the "person or group of persons" that: (1) "has either filed the complaint or made a motion in response to a [PSLRA] notice"; (2) "in the determination of the Court has the largest financial interest in the relief sought"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* (quoting 15 U.S.C. §78u-4(a)(3)(B)). The Partnership and Urman both filed motions seeking appointment in response to PSLRA notices, have already demonstrated the largest financial interest of any movant across the Related Actions by a wide margin, and both satisfy the relevant requirements of Rule 23, specifically, typicality and adequacy. *See*, *e.g.*, ECF Nos. 26 & 33 in 21-cv-8897 (Memoranda of Law in support of the Partnership's and Urman's appointments as lead plaintiffs of the Viacom case). And as illustrated below, the financial interest of the Partnership and Urman dwarfs by

---

4        In the unlikely event that some genuine conflict arose later in the case, the Court will have at its disposal the full range of case management tools available, including those under the PSRLA and Fed. R. Civ. P. 23, which are routinely applied by courts in all manners of complex litigation.

several orders of magnitude the interests of all remaining competing movants to date across all the

Related Actions:

| Movant | Claimed Losses |
|---|---|
| **The Partnership & Urman** | **$5,772,917** |
| Krueger | $163,233 |
| Zaheer | $116,541 |
| Shapovalov | $63,829 |
| Hanif | $53,951 |
| Ieong | $23,820 |

We submit that the Partnership and Urman together, having already demonstrated the

largest loss by a wide margin, are plainly the best-suited movant to lead the consolidated action as

Co-Lead Plaintiffs pursuant to the PSLRA. *See Hevesi*, 366 F.3d at 82 (because the purpose of

the PSLRA lead plaintiff process is "to empower one or several investors with a major stake in the

litigation to exercise control over the litigation as a whole," "the PSLRA mandates that courts must

choose a party who has, among other things, the largest financial stake in the outcome of the case");

*see also Richman*, 274 F.R.D. at 479 ("Most courts agree that the largest loss is the critical

ingredient in determining the largest financial intertest and outweighs [other factors]").[5]

The Partnership and Urman both also satisfy the typicality and adequacy requirements of

Rule 23.  Like every putative class member across the Related Actions, the Partnership and Urman

assert the same claims against the same defendants arising out the same alleged misconduct.  And

they have retained counsel with the extensive securities litigation experience and expertise

required to competently and zealously prosecute the uniform claims alleged on behalf of all

potential class members.  *See infra*.  They also have already demonstrated their ability to work

---

[5]    Courts in the Second Circuit recognize that future PSLRA notice deadlines in later filed (or even as of yet unfiled) similar actions are no impediment to the prompt consolidation and appointment mandated by the PSLRA.  *See, e.g., Synergy*, 2019 WL 6150713, at *4-*5 (PSLRA required consolidation and appointment over "litigation as a whole," which renders "moot" pending "motions for appointment" in later filed related actions).

cooperatively together, with Defendants, and with the other plaintiffs across the Related Actions, coordinating with Defendants on case management and scheduling across all the cases and taking the initiative to organize and coordinate threshold case management and scheduling among all the various plaintiff groups. While two of the seven movants do not agree on the best case-management path forward, all can attest to the undersigned's extensive good-faith efforts to engage all sides in a good-faith discussion of the issues. Nor is there any reason this already ample record of open and constructive collaboration with the other interested plaintiff groups need end here. Should the Court grant consolidation and appoint the Partnership and Urman as Co-Lead Plaintiffs for the consolidated action, they intend to propose an executive committee of additional named plaintiffs to serve as representatives, which will further ensure that the interests of all class members continue to be well-represented.

Should the Court agree to appoint the Partnership and Urman as Co-Lead Plaintiffs of the consolidated action, the Court should approve Co-Lead Plaintiffs' choice of Scott+Scott, Hedin Hall, and Pomerantz, to serve as Co-Lead Counsel. Not only is Co-Lead Plaintiffs' choice of counsel accorded deference under the PSLRA, but the scope and complexity of the constituent actions here warrant appointment of multiple firms with the resources, expertise, and record of successful collaboration to effectively and efficiently prosecute these claims and achieve the best possible resolution and recovery for all putative class members. Scott+Scott, Hedin Hall, and Pomerantz are uniquely well-suited to serve in that capacity here.

Scott+Scott, Hedin Hall, and Pomerantz have already demonstrated the ability to vigorously prosecute their respective actions and have committed to do so should they be appointed Co-Lead Counsel. For example, prior to filing the first-filed *Tan* Action, Scott+Scott and Hedin Hall worked collaboratively to conduct extensive and time-consuming research into

underlying facts and unique theories of liability asserted in the Related Actions, including reviewing public filings, records, and documents concerning Defendants and third parties, and researching the applicable law with respect to the claims asserted against Defendants and the potential defenses thereto. Pomerantz's contributions to the group's private, ongoing investigation has similarly been substantial. Among the chief strengths of Scott+Scott, Hedin Hall, and Pomerantz is collaboration; our zealous but sober approach is already reflected in both our having worked up all of these cases from scratch and our demonstrated ability to build consensus among all the undersigned firms. Furthermore, Scott+Scott, Hedin Hall, and Pomerantz each have substantial experience in the prosecution of securities class actions, each possess the necessary resources to efficiently conduct this complex litigation, and all three have successfully worked together on similar cases in the past. *See*, *e.g.*, *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018) (Pomerantz recovered $3 billion on behalf of Petrobras investors); *In re: Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.) (Scott+Scott achieved over $2.3 billion in final-approved settlements); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-07126 (S.D.N.Y.) (Scott+Scott recovered $504.5 million for investors who transacted in ISDAfix agreements); *Plymouth Cty. Ret. Sys. v. Impinj, Inc.*, Index No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (Hedin Hall co-lead counsel for aggregate $20 million securities class action settlement).

At bottom, this Court's astute observation at the Status Conference was correct: the Related Actions are "tailor made" for consolidation. The efficiencies to be gained are obvious, and despite the parties' collective best efforts, no one has been able to identify any credible conflict or other risk that would genuinely counsel to the contrary. Should the Court agree and grant consolidation, the undersigned further submit that the Partnership and Urman have already demonstrated the

largest financial interest and otherwise satisfy each requirement under the PSLRA, and thus the Court should proceed to appoint them Co-Lead Plaintiffs and approve their selection of Scott+Scott, Hedin Hall, and Pomerantz as Co-Lead Counsel. No other movant loss is even in the ballpark. Nor can vague notions of potential risk at class certification or beyond undermine the clear adequacy and good sense of appointing the movants with the largest loss as well as their chosen counsel, who not only have the experience and expertise to lead this consolidated action, but also happen to be the very lawyers who invested the time and resources to independently investigate and work-up the facts and unique theories alleged in each of the Related Actions. No team is better suited to get this case moving now on behalf of all potential class members.

Finally, to avoid all doubt, should the Court opt not for consolidation but for coordination or another alternative procedure or structure, each of the undesigned remains ready and committed to serving on behalf of their respective issuer classes and continuing to work productively with all interested parties in the best interests of all potential class members across the Related Actions.

DATED:  January 28, 2022                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
Rhiana L. Swartz
Jonathan M. Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

*Proposed Lead Counsel and Counsel for Proposed Lead Plaintiff the Kellner Newcomer Family Partnership and Plaintiffs Tan, Florio, Merson, Ulanch, Felix, Scully, & Lee, and Lead Plaintiff Movant Hanif*

**HEDIN HALL LLP**
David W. Hall (*pro hac vice* forthcoming)
Armen Zohrabian (*pro hac vice* forthcoming)
Arun Ravindran (*pro hac vice* forthcoming)
Four Embarcadero Center, Suite 1400
San Francisco, CA  94104
Telephone: 415-766-3534
Facsimile:  415-402-0058
dhall@hedinhall.com
azohrabian@hedinhall.com
aravindran@hedinhall.com

*Proposed Lead Counsel and Counsel for Proposed Lead Plaintiff the Partnership, Plaintiffs Tan, Florio, Merson, Ulanch, Felix, Scully, & Lee, and Lead Plaintiff Movant Hanif*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, NY  10016
Telephone: 212-661-1100
Facsimile:  212-661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Proposed Lead Counsel and Counsel for Proposed Lead Plaintiff Urman, Plaintiffs Li and Chen, and Lead Plaintiff Movant Ieong*

**JOHNSON FISTEL, LLP**
Ralph M. Stone
1700 Broadway, 41st Floor
New York, NY 10019
Telephone: 212-292-5690
Facsimile: 212-292-5680
RalphS@johnsonfistel.com

**JOHNSON FISTEL, LLP**
Michael Ira Fistel, Jr.
40 Powder Springs St.
Marietta, GA  30064
Telephone: 770-200-3104

11

Facsimile:  770-200-3101
michaelf@johnsonfistel.com

*Counsel for Lead Plaintiff Movant Shapovalov*

**THE SCHALL LAW FIRM**
Brian J. Schall
1880 Century Park E, Suite 404
Los Angeles, CA  90067
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Additional Counsel for Proposed Lead Plaintiff the Partnership*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone: 212-697-6484
Facsimile:  212-697-7296
peretz@bgandg.com

*Additional Counsel for Ieong, Chen, & Li*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 28, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
