UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEW KING TAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GOLDMAN SACHS GROUP INC. and MORGAN STANLEY, <br><br> Defendants. <br><br> THIS DOCUMENT RELATES TO: <br><br> 1:21-cv-08618-PAC <br> 1:21-cv-08752-PAC <br> 1:21-cv-08897-PAC <br> 1:21-cv-09420-PAC <br> 1:21-cv-09564-PAC <br> 1:21-cv-10286-PAC <br> 1:21-cv-10791-PAC <br> 1:21-cv-10999-PAC <br> 1:22-cv-00169-PAC | **MEMORANDUM & ORDER** <br><br> Case No. 1:21-cv-08413-PAC |

Pending before the Court are ten virtually identical putative class actions (the "Archegos Actions") brought by purchasers of various stocks who claim to have suffered harm stemming from alleged insider trading by Defendants Goldman Sachs Group Inc. and Morgan Stanley (together, "Defendants"). Now, the Court is tasked with charting a just and efficient course for the parties to litigate these claims. This Order concerns several such case management issues, including consolidation, coordination, and the process for appointing lead plaintiffs and lead counsel.

1

## BACKGROUND

Each of the ten actions arises from the alleged March 2021 woes of Archegos Capital Management.[1] Archegos was a private family capital firm formed to manage the personal assets of Bill Hwang, an American investor. According to Plaintiffs, Archegos was heavily leveraged, through "total return swaps," in stock issued by companies including—as relevant here—ViacomCBS Inc., Vipshop Holdings Ltd., Discovery Inc., Farfetch Ltd., Tencent Music Entertainment Group, Baidu Inc., IQIYI Inc., and Gaotu/GSX Inc.

The ViacomCBS position proved to be Archegos' downfall. After various market reports declared it overvalued, ViacomCBS stock price fell by more than 50% between March 23 and March 26, 2021. Scrambling to meet the demands of its lenders, Archegos was promptly forced to liquidate $20 billion in its various positions. When news of Archegos' plight became public, many financial institutions and investors hurried to unload their own positions in these Archegos-backed companies at, per Plaintiffs, "fire sale prices." That is, Plaintiffs allege, except for Defendants— each of whom had already sold off billions of dollars of "Archegos' doomed bets" *before* word of the firm's demise reached the public and the relevant stock prices fell.

Plaintiffs are investors who acquired the relevant stocks during that period. The ten complaints are virtually identical—asserting identical causes of action based on identical factual circumstances, and alleging identical underlying conduct by identical defendants across identical time periods. They differ only with respect to their proposed classes, each of which is defined based on the issuer of the stock in question: two actions are brought on behalf of purchasers of Vipshop stock; two on behalf of purchasers of IQIYI stock; two on behalf of purchasers of Tencent stock;

---

[1] This brief summary of Plaintiffs' allegations is drawn from the complaints filed in the individual Archegos Actions, each of which allege identical facts. *See* Complaint, ECF No. 1.
Unless otherwise indicated, all docket citations are to Case No. 21-cv-8413.

and the remaining four actions on behalf of purchasers of, respectively, Gaotu, Baidu, Discovery, and ViacomCBS stock.

**DISCUSSION**

**I.    Consolidation/Coordination**

### a. Actions Involving the Same Issuer

As an initial matter, the Court agrees with the parties that actions filed on behalf of purchasers of the *same* issuer's stock should be consolidated by issuer. Rule 42(a) of the Federal Rules of Civil Procedure provides for consolidation of actions that "involve a common question of law or fact." The Private Securities Litigation Reform Act of 1995 ("PSLRA") likewise contemplates consolidation where "more than one action on behalf of a class assert[s] substantially the same claim." *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). The actions relating to the same issuer's stock easily meet these criteria and should be consolidated by issuer, as set forth at the end of this Order.

### b. Actions Involving Different Issuers

The actions brought on behalf of purchasers of *different* issuers' stock present a more difficult question. There is broad consensus among the parties that the Archegos Actions are all-but-identical and should therefore be closely coordinated. However, the parties disagree as to the precise contours of that coordination. A joint filing endorsed by each of the named plaintiffs who have filed an action, the movants purporting to have suffered the largest losses, and several other movants (together, the "Plaintiff Group") submits that the cases should be consolidated in their entirety in order to unlock "obvious" and uncontroverted efficiencies. (Pls.' Joint Submission at 9, ECF No. 38.) By contrast, Defendants (along with a few plaintiff-side outliers) contend that the cases should be coordinated, and briefed in tandem, but not consolidated. (*See* Defs.' Ltr., ECF No. 37; Kim Ltr., ECF No. 36; Krueger Ltr., ECF No. 37, Case No. 21-cv-8752.)

3

The Court agrees with Defendants that, at this early stage in the litigation, the Archegos Actions should be closely coordinated, but not fully consolidated. "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). Courts making such a determination should weigh "'considerations of judicial economy' against 'a paramount concern for a fair and impartial trial.'" *Amberber v. EHang Holdings Ltd.*, No. 21-cv-1392 (GBD), 2022 WL 409096, at *2 (S.D.N.Y. Feb. 10, 2022) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990)).

In this instance, these two interests are at odds. On the one hand, in light of the substantial factual and legal uniformity of the complaints in the Archegos Actions, the Court finds that efficiency and judicial economy considerations weigh strongly in favor of close coordination, and could perhaps even justify consolidation. On the other hand, though, the Court understands that as-yet invisible points of factual and legal divergence, individualized discovery concerns, class certification complications, and even conflicts between the classes, may *eventually* emerge. Such developments could splinter the individual Archegos Actions from one another. Accordingly, the Court deems the prospect of consolidation premature at this time. *See Repex Ventures v. Madoff*, No. 09-cv-2032 (RMB), 2009 WL 10697939, at *4 (S.D.N.Y. Oct. 5, 2009) (declining to consolidate related actions for all purposes because the purchasers "may have purchased their shares from different issuers based upon different representations and have claims against different Defendants that are based on different events," and therefore those purchasers "must allege facts specific to the security or fund in question") (cleaned up).

The Court therefore declines to consolidate the Archegos Actions at this time, without prejudice as to further consolidation at a later stage in the litigation. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 294 (S.D.N.Y. 2003) (actions consolidated by common issuer, but merely coordinated where issuers differed).

Instead, these cases will be *coordinated* as set forth at the end of this Order.

## II.    Lead Plaintiffs and Lead Counsel

The Court will turn next to the task of appointing lead plaintiffs (and lead counsel) to direct the individual, coordinated actions. The PSLRA provides that courts "shall not make the [lead plaintiff] determination . . . until after the decision on the motion to consolidate is rendered," as soon as it is "practicable" to do so. *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii). Although the two issues are often addressed in tandem, the Court finds that, in this instance, it is not yet practicable to do so. To date, a number of movants have submitted papers in support of their respective bids to lead the *individual* actions, without respect to the related actions. However, the question of which plaintiffs are "most adequate" to lead each of the *coordinated* actions, and what leadership structure would "fairly and adequately protect the interests" of the various classes by ensuring the efficient, coordinated litigation of each action, has not yet been adequately addressed.[2] *See* 15 U.S.C. § 78u-4(a)(3)(B).

To be sure, the Court intends to appoint a single lead plaintiff (or, as appropriate, co-leads) *per action*. But given the need for these all-but-identical cases to be closely coordinated, the Court cannot assess prospective lead plaintiffs without considering how those prospective leads will cooperate, coordinate their efforts, synchronize their motion practice, and take other steps to preserve efficiency throughout this litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B). The Court will look to similar concerns in determining whether proposed lead counsel will adequately "protect the interests of the class." *See Bishins v. CleanSpark, Inc.*, No. 21-cv-511 (LAP), 2021 WL 5741574, at *4 (S.D.N.Y. Dec. 2, 2021).

---

[2] Although the Plaintiff Group gestured at these questions in its filing concerning consolidation, it did not address them in full. (*See* Pls.' Joint Submission at 6–8.) Because, naturally, these papers primarily centered around the separate matter of consolidation, the Plaintiff Group did not have occasion to discuss why the proposed co-lead plaintiffs *together* satisfy the PSLRA's requirements— including the specific requirements for *co*-leads discussed *infra* p. 7.

5

**CONCLUSION**

Thus, the Court hereby orders the following:

1. The following cases are to be consolidated as set forth below:

    - (Vipshop) 21-cv-09420 and 21-cv-08413 are consolidated into 21-cv-08413.

    - (Tencent) 21-cv-09564 and 21-cv-08752 are consolidated into 21-cv-08752.

    - (IQIYI) 21-cv-10999 and 21-cv-10286 are consolidated into 21-cv-10286.

2. The following cases, which should continue to be marked as related, are to be closely coordinated, but not consolidated at this time:

    - 21-cv-08413; 21-cv-08752; 21-cv-10286; 21-cv-08618; 21-cv-08897; 21-cv-10791; and 22-cv-00169.

3. Additional cases, if any, arising from the factual circumstances at issue in the Archegos Actions shall be marked related and, if they share an issuer with an existing Archegos Action, consolidated into the appropriate docket for that issuer unless good cause is shown against consolidation.

4. Any prospective movants seeking to be appointed lead plaintiff of their respective actions are directed to file supporting papers by March 30, 2022. Because the Court regards several issues that have not yet been adequately briefed—detailed below—to be essential to these determinations, it will not consider any lead plaintiff motions filed prior to this Order.

5. All lead plaintiff submissions should address the following: why the movant is best positioned not only to lead their own class, but also to cooperate productively and efficiently with the other class leads. Similarly, all submissions should detail a proposed leadership structure that will protect against the duplicative and inefficient individualized litigation of matters common across all of the actions. Finally, all prospective lead plaintiffs are directed to submit, as exhibits to their memoranda in support of their motions to be appointed lead,

6

proposed orders detailing the precise contours of coordination for purposes of the filing of amended complaints, omnibus motion to dismiss briefing, and any other immediate motion practice or other matters that the Court will need to adjudicate prior to the discovery and class certification stages. If any groups of plaintiffs wish to address these issues in a joint filing, rather than in their individual supporting memoranda, they may do so.

6. Proposals for lead counsel should similarly address not just competence and expertise, but also cooperativeness, civility, and a proposed leadership structure that will protect against duplicativeness, inefficiency, and in-fighting. To the extent any parties wish to do so, these issues may again be addressed in a joint filing rather than in individual supporting memoranda.

7. Any submissions seeking the appointment of co-lead plaintiffs and/or co-lead counsel within an individual action should address the appropriate standards for such an arrangement. *See, e.g., Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) ("The prevailing position is that unrelated investors may join together, with review on a case-by-case basis, only if such a grouping would best serve the class.") (cleaned up); *White Pine Invs. v. CVR Ref., LP*, No. 20-cv-2863 (AT), 2021 WL 38155, at *2 (S.D.N.Y. Jan. 5, 2021) (enumerating factors relevant to this calculus); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004) (concerning co-lead counsel).

Dated: New York, New York
       March 9, 2022

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

7